IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **FERNANDO CHAPA and VALERIE CHAPA, Individually and as Guardians of DAKOTA FULLER, a minor,** | ) ) ) ) ) | CASE NO. 8:04CV376 |
| Plaintiffs, | ) ) | MEMORANDUM AND ORDER |
| vs. | ) ) ) | |
| **UNITED STATES OF AMERICA,** | ) ) | |
| Defendant. | ) | |

This matter is before the Court on a Motion to Dismiss under Fed. R. Civ. Pro. 12(b)(6) filed by Defendant the United States of America (the "United States"), and in the alternative, on the United States' motion for summary judgment. (Filing No. 28). The matter has been fully briefed, and the Court has considered the evidence submitted.

The Complaint alleges that three physicians employed by the United States at Ehrling Bergquist Hospital at Offutt Air Force Base failed to recognize the signs of chid abuse and failed to report the abuse of minor Dakota Fuller. (Filing No. 1, hereafter "Complaint" ¶¶ II, III, VII). The Complaint alleges that as a result of the physicians' negligence, carelessness, and medical malpractice, Dakota Fuller suffered permanent disabilities from injuries consistent with "Shaken-Baby Syndrome." (Complaint ¶ IX). The Complaint further alleges that Guardians, Fernando Chapa and Valerie Chapa, have incurred and will continue to incur expenses to care for Dakota Fuller. (*Id.* ¶¶ VII, X).

This matter is before the Court pursuant to 28 U.S.C. § 1346(b), which grants exclusive jurisdiction to district courts for claims against the United States for money damages for personal injury or death caused by the negligent or wrongful act or omission

of employees of the United States while acting within the scope of their employment.[1]

## *Standards*

### Fed. R. Civ. Pro. 12(b)(6)

In considering a motion to dismiss a complaint under Rule 12(b)(6), the court must assume all the facts alleged in the complaint are true; and must liberally construe the complaint in the light most favorable to the plaintiff. *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001); *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). A Rule 12(b)(6) motion to dismiss should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Young,* 244 F.3d at 627. Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *Schmedding*, 187 F.3d at 864.

### Summary Judgment

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003). The proponent of a motion for summary

---

[1] *See* 28 U.S.C. § 1346(b)(1), which states in pertinent part:

...[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346.

judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id*. at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id*. at 586. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-50 (citations omitted).

### *Background*

Dakota Fuller ("Dakota") was born on August 3, 2001, to John and Christina Fuller (the "Fulllers"). (Filing No. 29, Ex. 1 hereafter "Israel Decl." ¶ 2). The Fullers brought Dakota to Ehrling Bergquist Hospital (the "Hospital") at Offutt Air Force Base on September 25, 2001, claiming Christina accidentally gave Dakota an overdose of Sudafed. (Israel Decl. ¶ 2). The attending physician was Dr. Lyle J. Vanderschaff. (Filing No. 32, hereafter "Index" at 21). On October 5, 2001, the Fullers brought Dakota to the Hospital for a routine

appointment. (Israel Decl. ¶ 3). The attending physician, Dr. Lynn Murphy, noticed a one-centimeter bruise on Dakota's forehead; the Fullers claimed the bruise occurred while Dakota was at daycare. (*Id.* ¶ 3; Index at 22). Dr. Murphy suggested that the Fullers change daycare providers or set stricter guidelines with the daycare provider. (Israel Decl. ¶ 3). One week later, on October 12, 2001, John Fuller brought Dakota to the Hospital, claiming John had dislocated Dakota's arm while lifting him. (*Id.* ¶ 4). Dakota was treated by Dr. Richard Garri, who diagnosed and treated a mild dislocation. (Index at 24).

On December 2, 2001, John Fuller again brought Dakota to the Hospital, claiming Dakota had aspirated some food or vomit. (Israel Decl. ¶ 5). The medical records indicate that Dakota was not breathing and did not have a pulse at this time. (*Id.*). The Hospital staff resuscitated Dakota and transferred him to Children's Hospital of Omaha for specialized and intensive care. (*Id.*). The Children's Hospital diagnosed Dakota with numerous injuries consistent with violent shaking, a condition known as "Shaken-Baby Syndrome." (*Id.*). The Sarpy County Attorney charged John Fuller with first-degree assault and intentional child abuse, and John Fuller pled no contest to a reduced charge of attempted felony child abuse on October 22, 2002. (*Id.* ¶ 6).

Dakota suffered permanent injuries as a result of his father's abuse. Dakota suffers from permanent brain damage, blindness, seizures, and an inability to walk. (Complaint ¶ IX). The Complaint alleges Dakota will continue to experience physical and mental pain and will incur future medical expenses and loss of wages. (*Id.* ¶ X).

Fernando and Valerie Chapa (the "Chapas") are Dakota's guardians. (*Id.* ¶ II). As a result of Dakota's injuries, the Complaint alleges the Chapas have incurred expenses

and will continue to incur expenses to care for Dakota.  (*Id.* ¶ X).  The Chapas submitted a claim for $15,000,000 to the Secretary of the Air Force on August 28, 2003.  (*Id.* ¶ XI).  Pursuant to 28 U.S.C. § 2675(a), the claim was rejected when the agency failed to make a final disposition of the claim within six months after it was filed.  (*Id.*).

On August 11, 2004, the Chapas filed a Complaint against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et. seq., claiming the United States is liable for the negligence, carelessness, and medical malpractice of its employees, Drs. Lyle Vanderschaff, Lynn Murphy, and Richard Garri (collectively, the "Physicians"). (*Id.*¶¶ I, IV, V, VI, X).  The Complaint alleges that the Physicians deviated from the standard of approved practice by failing to recognize the signs of child abuse and by failing to intervene to prevent further child abuse.  (*Id.* ¶ VIII).

The United States filed a Motion to Dismiss based on Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim for which relief can be granted, or in the alternative, a summary judgment motion (Filing No. 28), arguing that the Physicians did not owe a legal duty to Dakota and the Chapas under the facts of this case because Nebraska's child abuse reporting statutes do not authorize a civil cause of action.  (Filing No. 30 at 2, 14).

### *Discussion*

**Fed. R. Civ. Pro. 12(b)(6)**

The United States moved to dismiss the Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), arguing the Chapas failed to state claim for which relief can be granted.  (Filing No. 28).  Rule 12(b)(6) directs the Court to construe the Complaint in the light most favorable to the Chapas.  The Complaint alleges the United States is liable for the

5

negligence, carelessness, and medical malpractice of its Physicians, who allegedly failed to recognize the signs of child abuse and failed to intervene to prevent further child abuse. (Complaint ¶¶ VIII, IX).  The Complaint also alleges the Physicians deviated from the standard of approved practice, and that deviation resulted in permanent injuries to Dakota. (*Id.*).  The Court finds the Complaint alleges sufficient facts to state a medical malpractice claim and to survive dismissal pursuant to 12(b)(6).  Therefore, the United States' 12(b)(6) Motion to Dismiss is denied.

**Summary Judgment**

In the alternative, the United States moved for summary judgment (Filing No. 28), arguing that the Physicians owed no legal duty to Dakota and the Chapas under the facts of this case.  (Filing No. 30 at 2).  Before the Court discusses the merits of the United States' summary judgment motion, it is necessary to respond to the evidentiary objections made by the United States in its Reply Brief.  (Filing No. 33, hereafter "Reply Brief").

The United States objects to certain evidentiary items submitted by Fernando and Valerie Chapa in support of their Opposition Brief.  The United States specifically objects to Items 4 and 7 of the Chapas' Index to the Opposition Brief (Filing No. 32, hereafter "Index", Items 4 and 7), which are titled "Physician Use of Diagnostic Codes for Child and Adult Abuse" and "Pediatric Coding Manual" respectively.  The United States argues that Plaintiff's Counsel Mark Cox attempted but failed to authenticate Items 4 and 7 by way of his own Declaration (Index, Item 1), stating that he compiled the documents while conducting research.  (*Id.* at 3).

The United States also objects to the inclusion of excerpts of treatises and medical

journals in the Chapas' Opposition Brief.  (Reply Brief at 2-3).  The United States argues that these excerpts are inadmissible hearsay because the treatises and journals were not properly authenticated by an expert.  (*Id.* at 3).  The United States further argues that certain statements contained in Dr. Tilelli's Affidavit should be disregarded because Dr. Tilelli, a medical expert, lacks foundation to give legal opinions.  (*Id.* at 5).  Specifically, the United States objects to the admissibility of Dr. Tilelli's statements relating to the existence of a legal duty, arguing the existence of a legal duty is a question of law for the Court.  (*Id.* at 5-6).

Federal Rule of Civil Procedure 56(e) states that a party responding to a summary judgment motion must controvert the opposing party's submissions by setting forth "such facts as would be admissible in evidence."  Furthermore, NECivR 7.1(b)(2)(C) provides that any documents filed with the index by the party opposing the summary judgment motion "must be identified and authenticated by affidavit" and the "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Federal Rule of Evidence 803(18) creates an exception to the hearsay rule for properly-authenticated learned treatises.  However, 803(18) requires an expert to establish the reliability of a treatise before the treatise can qualify as learned treatise.  Fed. R. Evid. 803(18).[2]

---

[2]Fed. R. Evid. 803(18) states:

To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

Applying these principles, the Court agrees with the United States that Items 4 and 7 of the Index have not been properly identified or authenticated.  Mr. Cox's Declaration is insufficient to authenticate these items and proper foundation has not been laid.  Similarly, there is insufficient foundation for the Court to consider any references to "learned treatises" in the Chapas' Opposition Brief.  Mr. Cox's Declaration is insufficient to authenticate the treatises, and Dr. Tilelli's Affidavit makes no mention of these treatises.  The following shall be stricken from the record and not considered by the Court: Items 4 and 7 of the Index; and all references to "learned treatises" and "medical journals" in the Opposition Brief.  With respect to Dr. Tilelli's Affidavit, the Court will consider Dr. Tilelli's statements solely in the context of the applicable standard of medical care.

Turning to the merits of the United States' summary judgment motion, the Court finds there are genuine issues of material fact based on the admissible evidence, and therefore, denies the United States' summary judgment motion.  The controlling law for claims arising under the Federal Tort Claims Act ("FTCA") is the law of the state where the tort occurred.  *Budden v. U.S.*, 15 F.3d 1444 (8th Cir. 1994) (citing *Goodman v. United States*, 2 F.3d 291 (8th Cir.1993)).  Here, the events giving rise to the Chapas' claim occurred in Nebraska.  (Complaint ¶ II).  As stated above, the Court finds that the Complaint alleges sufficient facts to state a medical malpractice claim for failure to recognize the signs of child abuse.[3]

To present a medical malpractice claim in Nebraska, a plaintiff must demonstrate:

---

[3] The United States' Support and Reply Briefs focus solely on the alleged lack of a civil duty under Nebraska's child abuse reporting statutes, arguing that Nebraska's child abuse reporting statutes do not authorize a civil cause of action for failure to report.  However, the Court is persuaded that the Complaint alleges sufficient facts to state a medical malpractice claim based on a failure to diagnose and treat the child abuse of Dakota Fuller, rather than merely a failure to report suspected child abuse.

8

1) the generally recognized medical standard of care; 2) a deviation from that standard, and 3) that the deviation was a proximate cause of the plaintiff's alleged injuries. *Hamilton v. Bares*, 678 N.W.2d 74, 79 (Neb. 2004) (citing *Neill v. Hemphill*, 607 N.W.2d 500 (Neb. 2000)). In this case, the Physicians owed a duty to Dakota to use the generally recognized medical standard of care.

The Chapas have submitted the Affidavit of Dr. John Tilelli, a medical doctor in Florida who specializes in pediatrics. (Index at 1-11). Dr. Tilelli stated in his affidavit that:

> [The Physicians] failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of their profession engaged in similar practices in their or in similar localities by failing to diagnose and treat Dakota Fuller as suffering from child abuse and ongoing child abuse.... The medical care rendered by these doctors fell below or departed from accepted standards of medical care.... It is my further opinion that this departure from accepted standards of medical care caused the injuries sustained by Dakota Fuller.

(Index at 2, hereafter "Tilelli Aff." ¶ 7). Dr. Tilelli also stated: "The medical records fail to indicate that any medical provider at Ehrling Bergquist Hospital ever considered the diagnosis of non-accidental trauma or neglect in Dakota Fuller." (Tilelli Aff. ¶ 13).

Dr. Tilelli further stated that the treatment of a suspected victim of child abuse includes protecting the child from further harm. (*Id.* ¶ 15). According to Dr. Tilelli, the primary means of protecting such a child is admitting the child to the hospital to remove him from a threatening environment. (*Id.*). Dr. Tilelli argues that regardless of a legal duty to report suspected child abuse, the applicable standard of care in treating children who are potential victims of child abuse requires physicians to report such abuse. (*Id.* ¶ 16).

The Court finds that the Physicians had a duty to use the applicable standard of care in treating Dakota Fuller. The Court further finds there are genuine issues of material

of fact regarding whether the Physicians breached that duty by failing to recognize the signs of child abuse, and whether any such breach was a proximate cause of Dakota's injuries. Similarly, the Court finds that there is a genuine issue of material fact regarding whether the applicable standard of care required the Physicians to report suspected child abuse as part of the treatment of Dakota Fuller. In Nebraska, "[t]he appropriate standard of care in a medical malpractice action is a question of fact." *Breeden v. Anesthesia West, P.C.*, 656 N.W.2d 913, 921 (Neb. 2003). For these reasons, the United States' summary judgment motion is denied.

IT IS ORDERED:

1. Defendant United States of America's Motion to Dismiss pursuant to 12(b)(6), or in the alternative, Motion for Summary Judgment (Filing No. 28) is denied; and

2. The following shall be stricken from the record and were not considered by the Court:

    A) Items 4 and 7 of the Index in Support of Plaintiffs' Brief Opposing Defendant's Motion (Filing No. 32 at 17-20 and 30-31); and

    B) All references to "learned treatises" and "medical journals" in the Plaintiffs' Brief Opposing Defendant's Motion (Filing No. 31).

DATED this 7th day of September, 2005.

                                              BY THE COURT:

                                              s/Laurie Smith Camp
                                              United States District Judge